THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* MURIEL GENELLE, Defendant.

City Magistrate's Court of New York, Borough of Queens, Flushing District, June 27, 1952.

*Rose L. Weisler* for plaintiff.

*Francis Finkelhor* for defendant.

Del Giorno, M. This is a prosecution pursuant to the provisions of section 436–8.0 of the Administrative Code of the City of New York.

The defendant was served with a summons charging her with possession of a penny gum-ball machine as a gaming device. The defendant claims that this particular machine is a vending machine, and therefore, not subject to the aforesaid provisions of the Administrative Code.

The sole issue for determination after trial is whether the said gum ball machine was a gaming device, or, as claimed by the defendant, a vending machine. According to the evidence, the machine which was placed in evidence has a small base with a glass bowl on top. The bowl is filled with round gum balls among which are interspersed metal trinkets, such as planes, horseshoes, etc., which are covered with a shiny, golden-like metallic lacquer which renders them attractive and desirable especially in the eyes and mind of a child.

The testimony in substance was that the defendant possessed this machine in her candy store; that the officer who issued the summons inserted a few pennies, one at a time, and received through a slot in the metal base of the machine, a gum ball for each penny inserted. However, the trinkets did not always come out with the insertion of each penny. The testimony is abundant that every so often at unpredictable times, a trinket came out with the gum ball.

Further testimony developed the fact that each gum ball that fell out was worth a penny, and in addition it was shown too that when a patron complained that he had not received a trinket with the gumball, the storekeeper would give him a trinket similar to the ones kept in the machine, from a bunch of such trinkets she kept in her store for such an event.

In arriving at a decision herein, it may be pertinent to observe that the State Legislature has from time to time amended the law which we know today as section 982 of the Penal Law, in such a manner as to prohibit gambling machine devices and apparatus involving an element of chance in their operation, or adaptable to such use or operation. The law has been made more stringent as the slot machine racket has become more bold and resourceful in producing devices attractive to the gambling instincts of many of our people, especially the young. (*Matter*

*of Cullinan,* 114 App. Div. 654; *People* v. *Stein,* 146 N. Y. S. 852; *People* v. *McGahan,* 155 Misc. 707.)

The council of the City of New York went even further than section 982 of the Penal Law, and in 1948 enacted the section of the Administrative Code under which the present complaint is being prosecuted. It is evident that the principal elements of that section are a recognition of rackets in the gambling machine trade, the injurious effects on our youth and the determination to do away with such devices.

The intent of section 436-8.0 of the Administrative Code is clear. There remains the question whether it covers the type of machine herein involved.

Thus the questions to be considered in reaching the ultimate determination seem to me as follows:

1. Did the fact that trinkets were interspersed with the gum balls and came out at unpredictable intervals with the gum ball, but not with each gum ball, render the machine a gaming device as distinguished from a vending machine?

2. If the answer to the above question is in the affirmative, does the fact that the storekeeper furnishes the buyer with a trinket after he complains that he received none from the machine take it out of the class of gaming device?

To furnish the proper answer, effect must be given to the comprehensive legislative declaration which is part of section 436-8.0, which the court deems desirable to set forth in full. `` § 436-8.0 *Gaming devices.*— a. Legislative declaration. It is hereby declared that the possession, maintenance and operation in the city of gaming devices, as herein defined, are a menace to the public health, morals, safety and general welfare of the people of the city, and that such gaming devices encourage and foster gambling among adults and children, tend to cause juvenile delinquency and corrupt the morals of children, and breed crime, rackets and gangsterism. It is hereby declared that such gaming devices are instruments for gambling in their actual operation and use; that such gaming devices maintained and operated in the city are regularly, consistently and widely used as a means of gambling by the public; that it is the established practice of persons who distribute and operate such gaming devices, and it is an indispensable means of obtaining patronage therefor, to place such devices in candy, cigar and stationery stores, ice cream parlors, luncheonettes, locations in resort neighborhoods and similar establishments frequented by the general public and by children; that by reason of the public locations where such gaming devices are cus-

tomarily maintained, they are readily accessible to children; that many of the locations where such devices are and have been maintained are in the vicinity of schools, and are customarily frequented by large numbers of school children; that children as well as adults make a practice of playing these gaming devices and of gambling on the same; that in many instances children have squandered lunch money, carfare and earnings needed to supplement the family income on such devices, and have even committed thefts to obtain money with which to play such devices and gamble on the same; that the customary gambling on such devices is readily observable by children of all ages who frequent the locations where such devices are maintained; that gaming devices exercise a demoralizing effect upon the youth of the city, tend to teach children to gamble, engender juvenile delinquency, and involve children in harmful associations and an unfavorable environment, that criminals, racketeers and persons with underworld associations have engaged in and have sought to engage in the distribution, placing and operation of gaming devices in the city; that the distribution and operation of gaming devices have been commonly accompanied by racketeering and gangster tactics on the part of criminals and underworld elements; that proceeds derived by such persons from gaming devices have been used to finance criminal activities and the operation of criminal gangs; and that experience has demonstrated that by reason of various factors, including competition and rivalry among criminals and racketeers who seek to control the distribution and maintenance of gaming devices, there is danger of outbreaks of racketeering, homicides, crimes of violence, gang wars and other conditions detrimental to public peace and safety, unless the possession, maintenance and operation of gaming devices are prohibited within the city. The necessity for legislative intervention by the enactment of the provisions of this section is hereby declared as a matter of legislative determination.''

To give effect to their determination to eliminate gambling devices the city council enacted certain other subdivisions of the same section 436–8.0. For our purposes we shall quote the ones pertinent to our decision namely,

''b. Definitions. Whenever used in this section, the term ' gaming device ' shall mean and include:

'' 1. Any *game* involving *any element of chance* which is *caused to operate* or may be operated as a result of the insertion of any piece of money or coin or the insertion of any object

for which a fee, charge or other consideration is imposed directly or indirectly;

" 2. Any machine or apparatus, whether manually, mechanically, electrically or otherwise *operated* and whether or not affixed or attached to or installed in any premises or place, in or upon which machine or apparatus, *a game involving any element of chance may be played* by one or more persons, singly or collectively, upon the payment of a fee, charge or other consideration directly or indirectly ". (Emphasis supplied.)

Proceeding now, to an analysis of the case before the court, the code section in question must be construed in the light of the mischief it is intended to remedy. (*Metropolitan Life Ins. Co.* v. *Durkin*, 301 N. Y. 376.)

Manifestly, if the machine contained only gum balls worth a penny each, it would be merely a vending machine, and a legal means of effecting their sale. It would be solely a means of displaying merchandise and a sanitary receptacle for the gum balls. To this method of display and sale of the gum balls no exception could be taken.

The fact that the storekeeper may be ready and in this case was ready to give a trinket to the person who would complain that he received no trinkets with his gum ball, is not, in my opinion, material. The machine is either a gaming device or it is not, depending upon its own intrinsic makeup and arrangement. It is not the value of the trinket, but where it is placed with reference to the article to be bought which brings it within the prohibition of the ordinance. The trinkets kept by the storekeeper to pacify the complaining party are merely used to stifle the " kick " or complaint, or the disappointed cry of a patron who usually is a child. The giving of a trinket does not make the machine an innocuous vending machine if it is otherwise considered to be a gaming device.

The defendant, in her brief, attaches a copy of a letter issued December 18, 1945, by the Collector of Internal Revenue of Los Angeles, California, which sets forth that " if the only prizes occasionally dispensed along with the candy are toy charms, the machines (penny operated glass bowl type candy vending machines) are considered bona fide vending machines." The collector added that the Bureau of Internal Revenue held that the individual charms are of such insignificant value they are not prizes within the meaning of the statute.

The court rejects this contention. The collector is an administrative officer whose decision is not binding upon this court in any event. Furthermore, the value of the trinkets was the

essential basis of his decision, which was the interpretation of tax laws wherein value of an object must be based upon and in accordance with the provisions of the tax laws.

For the purpose of this decision, the value of the trinkets has no bearing upon whether the trinkets have value or not, is not material nor is any part of the administrative ruling of the collector either pertinent to or binding in this case.

Nor do we accept the other arguments raised by the defendant to the effect that the added inducement of the trinkets was a voluntary bonus given by the storekeeper and does not legally convert the vending character of the machine to that of gambling.

The court is of the opinion that if an arrest had been made under section 982 of the Penal Law, it would have been clear, by virtue of its more generalized language and the multitude of decisions rendered thereunder, that this machine was a gambling device involving a game of chance. (*People* v. *Siegel,* 301 N. Y. 43.)

However, under section 436–8.0 of the Administrative Code, the descriptive adjectives used therein such as " game ", " played ", and the phrase " by one or more persons ", have presented difficult problems which the court is called upon to construe.

At first blush one thinks of " game " as a contest involving the prior accord between a number of persons to engage in or play said game. Likewise, the word " played " indicates in its general or ordinary accepted meaning the participation of more than one person in the game, and the phrase " by one or more persons " would generally be understood to mean the participation of more than one person.

I find, however, that in this case with the machine herein involved, a game may be played by one person with the machine. A " game " may be a contest either between persons, or between a person and an inanimate object to determine who can overcome whom or which. In the instant case, the patron is the player and he plays a game by inserting the penny in the machine and turning the knob in the hope that it will release a trinket in addition to the gum ball. This is the game. Who will win? No one can foretell. The *result of that game is unpredictable*. That makes the machine a gambling device, for if the player does not get a trinket, he may try and try again.

That to the court is the general idea of the setup presented in this case which clearly involves a game between the player and the machine. Otherwise it would seem that the vendor

would be satisfied to leave the trinkets out of the machine and allow the person (generally a child or youth) to make his own choice for the proper satisfaction of his needs without the lure and attraction of the trinkets. But when the trinkets are placed among the gum balls in the bowl attached to the machine, that is another story. Without the shining attraction of the golden trinkets, the gum balls are just so many gum balls and would present no greater attraction to the purchaser than many other types of gum balls placed in similar contrivances, but without the addition of trinkets.

However, the trinkets shine, attract, even thrill and induce the purchaser to seek more than just the normal requirements of the gum ball. To him the shining trinket is a treasure. His desires become bigger than his necessity, and hence he is drawn to the gamble — a gamble to get the trinket with his next penny.

This type of gamble is without doubt not among the more heinous and seductive gambling devices. It at least delivers a penny's worth for the penny inserted. It may be, however, the beginning of the gambling instinct, particularly in the child. The habit is formed and the moral caution inherent in all of us is stifled. From the little rivulets comes the stream. Therefore our children who are the citizens of the future must be guarded in matters even as small as a gum ball machine with trinkets.

Thus, the court is of the opinion that the gum ball machine presented in this case is a gaming device within the meaning of section 436–8.0 of the Administrative Code, and accordingly finds the defendant guilty of the charge in the complaint.